**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:20-CV-611-RJC-DCK**

| | | |
|---|---|---|
| **CHANNELTIVITY, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **ALLBOUND, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion To Dismiss Plaintiff's First Amended Complaint" (Document No. 21). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be <u>granted</u> in part and <u>denied</u> in part.

## I. BACKGROUND

Plaintiff Channeltivity, LLC ("Plaintiff" or "Channeltivity") initiated this action with the filing of a "Complaint" (Document No. 1-1) in the Mecklenburg County Superior Court on October 2, 2020 against Allbound, Inc. ("Allbound"). The Complaint describes Plaintiff's business as providing "partner relationship management [("PRM")] services" to technology companies and asserts that Defendant is a direct competitor. <u>Id.</u> at p. 2. Plaintiff alleges that Defendant used corporate espionage to access Plaintiff's PRM products, which it used to improve Defendant's own product. <u>Id.</u> at pp. 2-3. The Complaint asserts causes of action for: (1) Misappropriation of Trade Secrets, (2) Conversion, and (3) Unfair Trade Practice. <u>Id.</u> at pp. 2-4. Defendant removed the action to this Court on November 4, 2020. (Document No. 1-2).

Defendant filed "Defendant's Motion To Dismiss" (Document No. 7) on December 11, 2020. Plaintiff then filed "Plaintiff's Motion For Leave To Amend The Complaint" (Document No. 15) on January 11, 2021, which was granted on January 14, 2021. (Document No. 16). On January 14, 2021, Plaintiff filed an "Amended Complaint" (Document No. 17). In the Amended Complaint, Plaintiff alleges that Defendant used "electronic infiltration techniques" to breach Plaintiff's security measures and subsequently "viewed, copied and downloaded voluminous amounts of Plaintiff's proprietary PRM products," which Defendant used, "resulting in an unexplained leap in the technical capacity of the quality and sophistication of Defendant's own inferior services." (Document No. 17, pp. 4-5). The Amended Complaint asserts causes of action for: (1) Misappropriation of Trade Secrets (under North Carolina law), (2) Misappropriation of Trade Secrets, in the Alternative (under Arizona law), (3) Conversion, and (4) violation of North Carolina's Unfair and Deceptive Trade Practices statute.

On February 4, 2021, Defendant filed its pending " . . . Motion to Dismiss Plaintiff's First Amended Complaint." (Document No. 21). On March 4, 2021, Plaintiff filed its "Memorandum In Opposition To Defendant's Motion To Dismiss Plaintiff's First Amended Complaint" (Document No. 25). Defendant filed "Allbound, Inc.'s Reply In Support Of Motion To Dismiss Plaintiff's First Amended Complaint" (Document No. 28) on March 18, 2021. The pending motion has now been fully briefed and is ripe for review and a recommendation to the presiding district judge.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992);

Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

### I. Motion To Dismiss

3

Defendant's "Motion To Dismiss" asks this Court to dismiss Plaintiff's Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. (Document No. 22, p. 1).

### a. Misappropriation of Trade Secrets

#### i. Defendant's Argument

With respect to the misappropriation of trade secrets claims, Defendant contends that Plaintiff's Amended Complaint fails to properly allege "the existence of a protectable trade secret." Id. at p. 6. Defendant argues that Plaintiff fails to identify the alleged trade secret(s) with "sufficient particularity." Id. at p. 7. Moreover, even assuming Plaintiff satisfies the particularity standard, Defendant asserts that "what Plaintiff purports to identify as a trade secret—PRM, in whole or in part—does not meet the statutory definition of a trade secret at all" because publicly available information is not a protectable trade secret. Id. Defendant alleges that Plaintiff failed to demonstrate reasonable efforts to maintain the secrecy as required of trade secrets, noting that "Plaintiff has posted videos [on YouTube] of at least two of the specific PRM 'features' listed in its Amended Complaint: Channel Partner Portal and Channel Partner Recruitment." Id. at p. 11.

Defendant argues also that the Amended Complaint contains "no assertion that the actions took place in either North Carolina or Arizona." Id. at p. 12, n.7. Therefore, Defendant asserts, it is impossible to determine under North Carolina's choice of law rules which state's law governs the misappropriation of trade secrets claim. Id. Thus, Defendant argues, both misappropriation claims (under either North Carolina or Arizona law) should be dismissed. (Document No. 28, p. 3).

#### ii. Plaintiff's Argument

Plaintiff spends several pages arguing that the North Carolina Supreme Court adopted the wrong pleading standard for misappropriation of trade secret claims in Krawiec v. Manley, contending that Justice Beasley was correct in her dissenting opinion that "[t]here is no statutory heightened pleading standard for misappropriation of trade secrets." (Document No. 25, p. 15) (citing Krawiec, 811 S.E.2d at 552-553 (N.C. 2018) (Beasley, J., dissenting) (citing N.C. Gen. Stat. § 1A-1, Rule 9 (2017))). Further, Plaintiff asserts that "where a real trade secret exists, courts should obviously avoid discussion of the particular secret so as not to deprive plaintiffs of the rights they sought to vindicate by filing the suit." (Document No. 25, p. 5) (quoting Glaxo, Inc. v. Novopharm Ltd., 931 F. Supp. 1280, 1300 (E.D.N.C. 1996)). Plaintiff argues that it has sufficiently alleged the existence of a trade secret, specifically, its PRM program, which it describes as "a collection of databases and tools created using source code which are sold together as a software program." (Document No. 25, p. 7).

As to the second element, Plaintiff argues that it sufficiently "maintained the secrecy of its PRM program by only disclosing the object code to customers using a password protected software and only disclosing the source code of its PRM program to its employees on a need-to-know basis." (Document No. 25, p. 11).

Finally, Plaintiff argues that because it has alleged that "Defendant gained unauthorized access to Plaintiff's PRM by using a third-party customer's login information and password," and that "Defendant has used what it obtained from Plaintiff's PRM, which has resulted in an unexplained leap in the technical capacity [and] quality and sophistication of Defendant's own inferior services," it has therefore provided circumstantial evidence of misappropriation. Id. at p. 13.

Plaintiff does not directly respond to Defendant's argument regarding the application of Arizona law, but rather, as Defendant notes in its reply, Plaintiff merely "explain[s] that its putative claim for misappropriation of trade secrets has been brought under North Carolina and, alternatively, Arizona law." (Document No. 28, p. 2) (citing Document No. 25, pp. 4, 17).

### iii. Analysis

Plaintiff makes claims for misappropriation of trade secrets under North Carolina law and for misappropriation of trade secrets under Arizona law, in the alternative. (Document No. 17, pp. 5-6). At the outset, the Court notes that "it is premature to make a decision regarding choice of law at this stage of the proceedings." <u>Movement Mortg., LLC v. McDonald</u>, 2018 WL 6733953, at *3 (W.D.N.C. Nov. 6, 2018). This is because "[a] choice of law inquiry may be very fact intensive and more appropriately undertaken after the record is sufficiently developed." <u>Id.</u> As in <u>Movement Mortgage</u>, then, the Court will not decide here which state's law applies under the applicable choice of law rule. According to the North Carolina Supreme Court, the applicable choice of law rule for a misappropriation of trade secrets claim is the *lex loci* test. <u>Software Pricing Partners, LLC v. Geisman</u>, 2020 WL 3249984, at *9 (W.D.N.C. June 16, 2020) (citing <u>SciGrip, Inc. v. Osae</u>, 838 S.E.2d 334, 343 (N.C. 2020)). The state's law that applies for a misappropriation of trade secrets claim under the *lex loci* rule "is where the misappropriation occurred." <u>Software Pricing Partners, LLC</u>, 2020 WL 3249984, at *9.

A choice of law analysis is more appropriate after discovery when more facts are available regarding where Allbound's alleged conduct took place. <u>See also</u> <u>Beritelli v. Wells Fargo Bank, N.A.</u>, 2013 WL 5460179, at *13 (W.D.N.C. Sept. 30, 2013) ("the record is not sufficiently developed to determine whether North Carolina law is applicable to the [Plaintiff's] claim…the Court cannot make a determination of the choice of law issue at this time [on a motion to

dismiss]").  Thus, the Court will proceed with its analysis pursuant to Fed.R.Civ.P. 12(b)(6) with respect to both of Plaintiff's claims for misappropriation of trade secrets, under both North Carolina and Arizona law.

To state a claim for misappropriation of trade secrets under both the North Carolina Trade Secrets Protection Act ("NCTSPA") and the Arizona Uniform Trade Secrets Act ("AUTSA"), Plaintiff must allege (1) the existence of a trade secret, and (2) misappropriation of that trade secret. Ariz. Rev. Stat. § 44-401;  N.C. Gen. Stat. § 66-155.

"It is well-established in North Carolina that at the pleadings stage, a plaintiff must 'identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur.'"  (Document No. 22, p. 7) (quoting Krawiec, 811 S.E.2d at 547).  The North Carolina Trade Secrets Protection Act (NCTSPA)

> [D]efines a trade secret as  "business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process" that (1) "derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use," and (2) is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

(Document No. 22, p. 7) (quoting N.C. Gen. Stat. § 66.152(3)).

Defendant notes that "Arizona's requirements for identifying a protectable trade secret are substantially similar to North Carolina," requiring that the information

> (1) "Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use;"  and (2) "is the subject of efforts that  are reasonable under the circumstances to maintain its secrecy."

7

(Document No. 22, p. 13) (quoting Ariz. Rev. Stat. § 44-401(4)).  Further, as in North Carolina, a complaint stating a claim for misappropriation of trade secrets under Arizona law must "describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." (Document No. 22, p. 13) (quoting Imax Corp. v. Cinema Techs., Inc., 152 F.3d 1161, 1164–65 (9th Cir. 1998) (emphasis added)).

Misappropriation under North Carolina law means "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent."  N.C. Gen. Stat. § 66-152(1).  Misappropriation does not include scenarios in which the "trade secret was arrived at [by a defendant] by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret."  Id.  Misappropriation

> is prima facie established by the introduction of substantial evidence that the person against whom relief is sought both: (1) Knows or should have known of the trade secret; and (2) Has had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner.

N.C. Gen. Stat. § 66-155.

And under Arizona law, the relevant definition of misappropriation under the AUTSA is "[d]isclosure or use of a trade secret of another without express or implied consent by a person who…used improper means to acquire knowledge of the trade secret."  Ariz. Rev. Stat. § 44-401(2)(b)(i).  "Improper means" under Arizona's statute "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or espionage through electronic or other means."  Ariz. Rev. Stat. § 44-401(1).

1. **Existence Of A Trade Secret**

8

At least as to the source code and object code used to generate Plaintiff's PRM, Plaintiff is correct that such elements of its PRM qualify as trade secrets under both North Carolina and Arizona law. Defendant's argument would have the Court believe that Plaintiff needs to "define every minute detail of its trade secrets down to the finest detail" – a level of specificity that is not borne out in the case law as a requirement to survive a motion to dismiss a misappropriation of trade secrets claim. RoundPoint Mortg. Co. v. Florez, 2016 WL 687629, at *12 (N.C. Super. Ct. Feb. 18, 2016) (citing Prolifiq Software Inc. v. Veeva Sys., Inc., 2014 WL 2527148, at *6 (N.D. Cal. June 4, 2014)). Plaintiff describes in its Amended Complaint its PRM – a "system of methodologies, strategies, software, and internet-based capabilities that help product and service vendors manage their partner relationships," all of which constitutes a "software program [that] was written and developed by Plaintiff in 'source code' over an extensive amount of time." (Document No. 17, pp. 1-2). Plaintiff further describes its source code as "an algorithm that enables Plaintiff to personalize the user interface, user flows, navigation, notifications, reminders, after-login procedures and many more functional capabilities for each specific customer." Id. at p. 2. "Plaintiff wrote the PRM program in source code and the source code was compiled into object code." (Document No. 25, p. 9). Plaintiff therefore describes its source code with sufficient specificity such that it merits treatment as a trade secret. Channeltivity successfully "identif[ies] the steps in the process [the source code's generation of a personalized PRM program for each of its clients] and explain[s] how those steps make [the] method or process unique." DSM Dyneema, LLC v. Thagard, 2014 WL 5317770, at *7 (N.C. Super. Ct. Oct. 17, 2014) (quoting BioD, LLC v. Amnio Tech., LLC, 2014 WL 3864658, at *6 (D. Ariz. Aug. 6, 2014)).

The Court of Appeals of North Carolina has found that source code and object code used to generate a computer software program constitute trade secrets. See Barr-Mullin, Inc. v.

Browning, 424 S.E.2d 226, 229-30 (N.C. Ct. App. 1993). Furthermore, Plaintiff provides adequate notice to Defendant of that which it is misappropriating. It is a gross overstatement for Defendant to suggest that it "is left to guess what the defendant is accused of misappropriating." (Document No. 22, p. 9). Indeed, although Defendant relies upon the North Carolina Court of Appeals decision in Washburn v. Yadkin Valley Bank and Trust Co. to suggest that Plaintiff's description of its PRM source code and object code is too "vague" and merely "recit[es] a list of generic categories of information," that is not a fair characterization of Plaintiff's Amended Complaint. (Document No. 22, p. 8); 660 S.E.2d 577, 586 (N.C. Ct. App. 2008). In Washburn, the plaintiff described its alleged trade secret as its "business methods; clients, their specific requirements and needs; and other confidential information pertaining to [its] business." 660 S.E.2d at 586. Here, Defendant is well aware – since it is a direct competitor of Plaintiff and in the PRM business itself – of what source code and object code are, and Plaintiff has done more than an adequate job describing it. See (Document No. 17, p. 2). The Washburn plaintiff's description is obviously too general and non-specific – it fails to even identify a product. Plaintiff, on the other hand, does identify a product – the source code and the object code – and thus successfully alleges the existence of a trade secret under North Carolina law.

Arizona law is substantially similar to North Carolina law in its standards for evaluating whether a plaintiff has successfully alleged the existence of a trade secret. See Modus LLC v. Encore Legal Solutions, Inc., 2013 WL 6628125, at *6 (D. Ariz.) (quoting Imax Corp. v. Cinema Techs., Inc., 152 F.3d 1161, 1164-65 (9th Cir. 1998)) ("[t]he plaintiff 'should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons…skilled in the trade.'"). And as under North Carolina law, "[i]t is insufficient to claim…that a system's characteristics generally

are trade secrets without clearly referring to the precise characteristics." Modus LLC, 2013 WL 6628125, at *5, *6, *8 (holding that the plaintiff successfully alleged the existence of a trade secret in the form of its electronic "script libraries" that were used "to facilitate a[n] [] interface"). Thus, the undersigned will not recount why the source code and the object code are described in adequate detail so as to satisfy the existence of a trade secret under Arizona's trade secret protection statute – for the analysis would proceed in an identical manner to that under North Carolina law.

The undersigned finds that at least as to the source code and object code components of the PRM program, Plaintiff has adequately alleged that they constitute a trade secret sufficient to satisfy the first element of a misappropriation of trade secrets claim under both North Carolina and Arizona law.[1] Ariz. Rev. Stat. § 44-401(4); N.C. Gen. Stat. § 66.152(3). The source code and object code both (1) derive independent economic value from not being generally known to others who would otherwise obtain such value if they were aware of it; and (2) are maintained under secrecy through Channeltivity's efforts to "only disclos[e] the object code to customers using a password protected software and only disclos[e] the source code of its PRM program to its employees on a need-to-know basis." (Document No. 25, p. 11); Id.

---

[1] As to the other components of the PRM, however, such as the "methodologies, strategies…and internet-based capabilities" that Plaintiff discusses in its Amended Complaint, Defendant is correct that these are broad and vague categories that do not meet the standard required to plead the existence of a trade secret. (Document No. 17, p. 1); see Washburn, 660 S.E.2d at 586 ("[t]he identification of the trade secrets allegedly misappropriated is broad and vague," therefore warranting dismissal of the misappropriation of trade secrets counterclaim). Furthermore, to the extent that Plaintiff is alleging that its "user interface, user flows, navigation, notifications, reminders, after-login procedures and many more functional capabilities" constitute a trade secret, that list, also, is too general. (Document No. 17, p. 2). Defendant is right to inquire about whether it is specific components of the PRM that Plaintiff is arguing constitute a trade secret or whether it is the PRM program in its entirety that constitutes a trade secret. (Document No. 28, p. 5). The Amended Complaint does not clarify the inquiry, particularly given the long lists of broadly worded categories. See (Document No. 17, pp. 1-2). Nonetheless, the Court finds that the source code and the object code that Plaintiff has "written and developed" are undoubtedly trade secrets as analyzed above – the other components of the PRM program, however, are either simply not described with sufficient particularity or are not reasonably maintained under secrecy. Id. at p. 2; (Document No. 22, p. 11). Defendant contends that "Plaintiff widely and publicly displays and promotes its user interface, functional capabilities, features, and look and feel of its PRM software on YouTube." (Document No. 22, p. 11). Thus, the Court will treat only the source code and object code for Plaintiff's PRM software as trade secrets.

11

## 2. Misappropriation Of The Trade Secret

And as to the second element of a misappropriation of trade secrets claim under North Carolina and Arizona law – that the Defendant misappropriated the alleged trade secret – Plaintiff has also sufficiently alleged facts to satisfy this element and thus withstand Defendant's motion to dismiss these claims.  Ariz. Rev. Stat. § 44-401;  N.C. Gen. Stat. § 66-155.  Plaintiff's Amended Complaint alleges that "Defendant's employees repeatedly accessed" Plaintiff's PRM through use of "a third-party customer's login information and password."  (Document No. 17, pp. 4-5).  Furthermore, Plaintiff alleges that Defendant thereby gained access "into Plaintiff's back-end source code," which it used to "view[], cop[y], and download[] voluminous amounts of Plaintiff's proprietary PRM products," resulting in "an unexplained leap in the technical capacity…of Defendant's own inferior services."  Id. at p. 5.  Plaintiff has therefore provided sufficient allegations in its Amended Complaint that Allbound both knew of the trade secret and used it without Channeltivity's consent to improve its own product – sufficient to establish the misappropriation element under North Carolina law.  N.C. Gen. Stat. § 66-155;  see Byrd's Lawn & Landscaping, Inc. v. Smith, 542 S.E.2d 689, 693 (N.C. Ct. App. 2001) (finding that the plaintiff presented adequate evidence on the misappropriation element where plaintiff showed through circumstantial evidence that the defendant knew of the trade secret – "historical cost information" – and presumably used it to his advantage when he "underbid plaintiff" after "leaving his employment with plaintiff").

Furthermore, under Arizona law, Plaintiff has also alleged sufficient facts in its Amended Complaint to satisfy the misappropriation element.  Ariz. Rev. Stat. § 44-401.  It has alleged that Defendant acquired Plaintiff's source code through repeated access using account information which it was not authorized to use.  (Document No. 17, p. 4);  see Food Servs. of Am., Inc. v.

12

<u>Carrington</u>, 2013 WL 4507593, at *11 (D. Ariz. Aug. 23, 2013) ("[t]he AUTSA is clear on its face; a person who *acquires* a trade secret is liable if acquired through improper means."). It has furthermore alleged that Defendant's logging in to Channeltivity's PRM interface using login information that was not its own constitutes "improper means" – "espionage" through electronic means. (Document No. 17, pp. 4-5); Ariz. Rev. Stat. § 44-401(4).

The undersigned therefore respectfully recommends that Defendant's motion to dismiss Plaintiff's claims for misappropriation of trade secrets under both North Carolina and Arizona law be denied.

### b. Conversion

#### i. Defendant's Argument

With respect to Plaintiff's conversion claim, Defendant first contends that, "like Plaintiff's trade secrets claim, it is unclear whether Plaintiff is claiming conversion of its own software program, functional capabilities, source code, or other unspecified PRM products or features." (Document No. 22, p. 16). Defendant argues that "even if the converted property was sufficiently identified, Plaintiff's claim still fails because (1) it does not allege the required elements of a conversion claim since Plaintiff has not been deprived of anything, and (2) it is preempted by federal law (the Copyright Act)." <u>Id.</u>

Defendant emphasizes that "[t]he essence of conversion is . . . a wrongful deprivation of [property] to the owner." <u>Id.</u> at 16-17 (quoting <u>Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.</u>, 665 S.E.2d 478, 488 (N.C. Ct. App. 2008) (emphasis added)). Defendant argues that Plaintiff's allegations that Defendant "viewed, copied and downloaded" Plaintiff's PRM, which "is electronically-stored through 'the internet cloud,'" fail to allege the requisite deprivation of "possession or use of the property." (Document No. 22, p. 17). Because Plaintiff does not allege

that Defendant possesses the only copy of Plaintiff's PRM or that Defendant deleted such property, Defendant contends that Plaintiff's conversion claim "fails as a matter of law." Id.

Defendant's next argument is that Plaintiff's conversion claim fails because "it is preempted by the federal Copyright Act." Id. at 18. Defendant notes:

> Preemption is appropriate where (1) "the work is within the scope of the subject matter of copyright as specified in 17 U.S.C. §§ 102, 103," and (2) "the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106."

Id. (quoting Rosciszewski v. Arete Assocs., Inc., 1 F.3d 225, 229 (4th Cir. 1993) (internal citations omitted)). Because "computer programs clearly fall within the subject matter of copyright," Defendant asserts that Plaintiff's PRM software satisfies the first element. (Document No. 22, p. 18) (quoting Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 351 F. Supp. 2d 436, 442 (M.D.N.C. 2005)).

As to the second element, Defendant notes that it is met "where the plaintiff alleges only the unlawful retention of its intellectual property rights and not the unlawful retention of the tangible object embodying its work." (Document No. 22, p. 19) (quoting Maisha v. Univ. of North Carolina, 641 F. App'x 246, 250 (4th Cir. 2016)). Citing Plaintiff's allegations that Defendant "converted its PRM by electronically accessing Plaintiff's 'PRM portal,' allegedly 'hack[ing] into Plaintiff's back-end source code,' and 'view[ing], cop[ying] and download[ing]' Plaintiff's 'PRM products,'" Defendant argues Plaintiff failed to "allege that [Defendant] converted or retained any tangible or physical object." (Document No. 22, p. 19). Thus, Defendant contends that Plaintiff "has not alleged the 'extra element' of the state law claim necessary to avoid preemption." Id. at 18.

### ii. Plaintiff's Argument

In response, Plaintiff first notes that "[s]o long as there has been a denial or violation of the plaintiff's dominion over or rights in the property, the copying of electronic files is sufficient for a claim of conversion." (Document No. 25, p. 21) (first citing <u>Springs v. Mayer Brown</u>, 2012 WL 366283 (W.D.N.C. 2012); and then citing <u>Lake Mary Ltd. Partnership v. Johnston</u>, 551 S.E.2d 546 (N.C. Ct. App. 2001)). Plaintiff relies on <u>Bridgetree, Inc. v. Red F Marketing</u>, where Judge Whitney held that the plaintiff's allegations that the defendant downloaded and digitally stored plaintiff's proprietary documents were sufficient "to support a conversion claim because the copies of electronically stored information . . . denied [plaintiff] their right to exercise control over their proprietary information, even in electronic form." (Document No. 25, p. 22) (citing <u>Bridgetree, Inc. v. Red F Marketing</u>, 2013 WL 443698 (Feb. 5, 2013 W.D.N.C. 2012)). Plaintiff contends that, "like the plaintiff in <u>Bridgetree</u>, [Plaintiff] was excluded from exercising control over its proprietary information when Defendant copied and downloaded Plaintiff's proprietary software without authorization." (Document No. 25, p. 22). Thus, Plaintiff argues that Defendant's motion to dismiss Plaintiff's conversion claim should fail. <u>Id.</u>

### iii. Analysis

The federal Copyright Act at 17 U.S.C. § 301(a) preempts state law "claims if 'the work is within the scope of the 'subject matter of copyright' as specified in 17 U.S.C. §§ 102, 103' and 'the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106.'" <u>Rosciszewski</u>, 1 F.3d at 229. The Fourth Circuit has clearly stated that computer programs "are within the subject matter of copyright," and thus the first element of the preemption analysis is satisfied here given that source code and object code are akin to a computer program. <u>Id.</u>

And, as to the second element, Defendant also successfully argues that it is satisfied and thus preemption of the conversion claim is warranted.  See (Document No. 22, pp. 18-19).  To evaluate the equivalency prong, the Fourth Circuit has adopted the "extra element" test – that is, the state law claim should contain an "extra element" to avoid preemption such that it "changes the nature of the action so that it is 'qualitatively different' from a copyright infringement claim." Madison River Mgmt. Co., 351 F. Supp. 2d at 442 (quoting Wharton v. Columbia Pictures Indus., Inc., 907 F. Supp. 144, 145 (D. Md. 1995)).  "It is hornbook law that a 'state law action for conversion will not be preempted [by the Copyright Act] if the plaintiff can prove the extra element that the defendant unlawfully retained the physical object embodying plaintiff's work.'"  Madison River Mgmt. Co., 351 F. Supp. 2d at 444 (quoting United States ex rel. Berge v. Bd. of Trs. Of the Univ. of Alabama, 104 F.3d 1453, 1463 (4th Cir. 1997)).  Since here, Plaintiff has merely alleged "unlawful retention of its intellectual property rights," and not the unlawful retention of any tangible, physical object encompassing its source or object code, "the conversion claim is preempted."  Madison River Mgmt. Co., 351 F. Supp. 2d at 444.

The undersigned finds that the issue of whether Plaintiff has satisfied the essential elements of conversion to be a close call, given the split of authority between the Western District of North Carolina's decision in Bridgetree and the line of authority that Defendant cites from the North Carolina Superior Court.  2013 WL 443698, at *15;  (Document No. 28, p. 8).  Therefore, the Court will decline to address that issue based on the strength of the alternative preemption argument – that Plaintiff's conversion claim is preempted by federal copyright law.  Furthermore, Defendant rightfully points out that Plaintiff makes no argument in opposition to Defendant's preemption argument in its responsive pleading.  See (Document No. 28, p. 10).  Based on the

preceding analysis, the undersigned respectfully recommends that Defendant's motion to dismiss Plaintiff's conversion claim be granted based on federal preemption.

### c. Unfair Trade Practices

#### i. Defendant's Argument

To state a claim for unfair trade practices in North Carolina, a Plaintiff must allege: "(1) the commission of an unfair act or practice (2) in or affecting commerce (3) that proximately caused injury to the plaintiff." (Document No. 22, p. 19-20) (first citing N.C. Gen. Stat. § 75-1.1; and then citing Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001)). Defendant argues that Plaintiff fails to meet both the first and the third elements. (Document No. 22, p. 20).

As to the first, Defendant notes that although "[v]iolations of the NCTSPA may constitute an unfair trade or practice," in cases "[w]here . . . the underlying misappropriation claim fails and the plaintiff 'makes no further allegations of specific unfair or deceptive acts,' the Court must dismiss the UTP claim." Id. (quoting Krawiec, 811 S.E.2d at 550) (citing GE Betz, Inc. v. Conrad, 752 S.E.2d 634, 650 (N.C. Ct. App. 2013)).

Regarding the third element, Defendant argues that Plaintiff's "rote, conclusory damages statements" fail "to allege how [Defendant]'s supposed 'corporate espionage' harmed it in any way." (Document No. 22, p. 21). After reciting Plaintiff's damages allegations from the Amended Complaint, Defendant emphasizes that "[c]ourts have held such barebones allegations to be insufficient to survive a Rule 12(b)(6) motion to dismiss." (Document No. 22, pp. 21-22).

Finally, Defendant argues that Plaintiff's UTP claim is preempted by the federal Copyright Act. (Document No. 22, p. 22). "The Copyright Act preempts the state law claim when there is no allegation of 'additional deceptive conduct that would make that claim 'qualitatively different'

than [a] copyright claim.'" Id. at 23 (quoting Logan Developers, Inc. v. Heritage Bldgs., Inc., 2013 WL 5460757, at *6 (E.D.N.C. Sept. 30, 2013)).

### ii. Plaintiff's Argument

In response, Plaintiff notes that "[a] violation of the Trade Secrets Protection Act constitutes an unfair and deceptive trade practice." (Document No. 25, p. 23) (first citing N.C. Gen. Stat. § 75–1.1; and then citing N.C. Gen. Stat. § 66–146). "A practice is unfair when it offends established public policy 'as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious.'" (Document No. 25, p. 23) (quoting Marshall v. Miller, 276 S.E.2d 397, 403 (N.C. 1981)). Plaintiff further notes that "[t]he 'relevant gauge' of an act's unfairness or deception is its effect on "the marketplace." (Document No. 25, p. 23) (quoting Marshall, 276 S.E.2d at 403).

Relying on its earlier arguments that Defendant's conduct violated the Trade Secrets Protection Act, Plaintiff contends that "Defendant's conduct also constitutes an unfair and deceptive trade practice as a matter of law." (Document No. 25, p. 23) (first citing N.C. Gen. Stat. § 75–1.1; and then citing N.C. Gen. Stat. § 66–146). Further, Plaintiff argues that Defendant's acquisition of Plaintiff's "object code" gave Defendant a "competitive advantage," which "has negatively impacted the market in which both companies compete." (Document No. 25, p. 23) (quoting Glaxo, Inc., 931 F. Supp. at 1300). Finally, Plaintiff contends that "theft has been decreed an act of immorality since the dawn of civilization[,] . . . which constitutes an unfair and deceptive trade practice." (Document No. 25, p. 23).

In response to Defendant's preemption argument, Plaintiff acknowledges that "North Carolina's UDPTA statute does not require an extra element 'instead of or in addition to' the elements needed to make out a copyright claim[,]" as required by the "extra element test."

(Document No. 25, p. 24) (quoting Pan–Am. Prods. & Holdings v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 698 (M.D.N.C. 2011)).  However, Plaintiff notes that due to the breadth of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), "courts will often look to the facts underlying the UDTPA claim to determine whether it is 'qualitatively different' than a plaintiff's copyright infringement claim."  (Document No. 25, p. 24) (quoting Pan-Am. Prods. & Holdings, 825 F. Supp. 2d at 698).  "A UDTPA claim is generally not preempted if the underlying conduct involves significant misrepresentation, deception, abuse of a confidential relationship or palming off, because it is qualitatively different than the copyright claim."  (Document No. 25, p. 24) (citing Pan-American, 825 F. Supp. 2d at 698).  Plaintiff argues that "Defendant's use of electronic infiltration techniques over the course of several months" qualifies as "a significant misrepresentation and deception."  (Document No. 25, p. 24).

### iii.  Analysis

In order to state a claim for violation of North Carolina's UDTPA, Plaintiff must allege three elements: "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001).

The undersigned declines under these circumstances to address the three prongs that a plaintiff must satisfy to allege a violation of the UDTPA because the Court finds that Plaintiff's UDTPA claim is clearly preempted by federal copyright law.  As stated above with respect to the conversion claim, the federal Copyright Act "preempts state-law claims 'if the work is within the scope of the 'subject matter of copyright' as specified in 17 U.S.C. §§ 102, 103' and 'the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106.'"  Rosciszewski, 1 F.3d at 229 (quoting Ehat v. Tanner, 780 F.2d

19

876, 878 (10th Cir. 1985)). The focus of the analysis again becomes the equivalency prong. Notably, "the Copyright Act preempts state law claims that lack an extra element which would make them 'qualitatively different from a copyright infringement claim.'" Pan-Am. Prods. & Holdings, LLC, 825 F. Supp. 2d at 691 (quoting Rosciszewski, 1 F.3d at 230). In Rosciszewski, the Fourth Circuit found that a state law claim under the Virginia Computer Crimes Act was preempted by the federal Copyright Act because "the core of both causes of action…is the unauthorized copying of a computer program." 1 F.3d at 230.

Although the UDTPA is not *always* preempted by federal copyright law, here, Plaintiff's Amended Complaint fails to allege a UDTPA claim that is "qualitatively different from a Copyright Act violation." Pan-Am. Prods. & Holdings, LLC, 825 F. Supp. 2d at 698. Since "the UDTPA does not explicitly require elements beyond those required of a copyright infringement claim, but rather is intended to include a broad range of deceptive and unfair conduct, North Carolina courts will often look to the facts underlying the UDTPA claim to determine whether it is qualitatively different." Baronius Press, Ltd. v. Saint Benedict Press LLC, 2017 WL 3412145, at *2 (W.D.N.C. Aug. 9, 2017). Preemption of the UDTPA claim in this case is warranted since Plaintiff does not allege any "extra allegations [that could] save its UDTPA claim from preemption," as explained below. Pan-Am. Prods. & Holdings, LLC, 825 F. Supp. 2d at 698. "A plaintiff cannot create an extra element to avoid preemption merely by predicating a UDTPA claim on the same actions giving rise to the copyright infringement claim." Id. UDTPA claims that would *not* be preempted by the federal copyright act might include extra elements such as "breach of fiduciary duty, breach of a confidential relationship, and palming off of the defendant's products as those of the plaintiff's." Id. at 697 (internal quotations and citations omitted).

Plaintiff contends that "Defendant's use of electronic infiltration techniques over the course of several months constitutes a significant misrepresentation and deception." (Document No. 25, p. 24). Not so. The Amended Complaint does not contain "any allegation that [] Defendant made any separate statement or half-truth, commonly the basis of a misrepresentation claim." Rutledge v. High Point Regional Health Sys., 558 F. Supp. 2d 611, 620 (M.D.N.C. 2008); see (Document No. 17). Nor, as Defendant points out, does Plaintiff's Amended Complaint make any allegations about deception. (Document No. 28, p. 13, n.2); see (Document No. 17, p. 8). Here, Plaintiff's allegations supporting its claim for violation of the UDTPA are the classic example of the type of "[u]fair competition claims" that are preempted: those "based [only] on misappropriation, without more," are preempted because they "only protect the same rights Congress sought to protect by the Copyright Act." Pan-Am. Prods. & Holdings, LLC, 825 F. Supp. 2d at 699; see Hunter Structural, P.A. v. Arp Eng'g, Inc., 2018 WL 662367, at *8 (W.D.N.C. Feb. 1, 2018) (holding that the plaintiff's UDTPA claim was preempted by federal copyright law because the plaintiff "merely repeats the same allegations with respect to the taking of the [computer files], which are within the scope of copyright protection").

In two North Carolina district court cases where the court found that the plaintiff's UDTPA claim was *not* preempted, the underlying facts contained an existing relationship between the parties upon which there was an affirmative misrepresentation. See Pan-Am. Prods. & Holdings, LLC, 825 F. Supp. 2d at 699-700 ("[Plaintiff] alleges more than the simple misappropriation at the heart of all copyright actions; it alleges misrepresentation based on an existing relationship between the parties…the alleged misrepresentation is more than a copyright infringer's knowledge that it is violating another's copyright or its intention to do so."); Baldine v. Furniture Comfort Corp., 956 F. Supp. 580, 587 (M.D.N.C. 1996). Here, as Defendant argues, "Plaintiff [] makes *no*

allegation of misrepresentation based on an existing relationship or of any false promises—or any promise at all—made by Allbound to Plaintiff." (Document No. 18, p. 13); see Old South Home Co. v. Keystone Realty Group, Inc., 233 F. Supp. 2d 734, 738 (M.D.N.C. 2002) ("Plaintiff has not alleged any breach of a confidential relationship or any affirmative acts of misrepresentation by Defendants," thus warranting preemption). Both because Plaintiff fails to allege an extra element that makes its UDTPA claim qualitatively different and because of the rarity of federal district courts in North Carolina finding that UDTPA claims are not preempted in this context, the undersigned respectfully recommends that Plaintiff's claim for violation of North Carolina's UDTPA be dismissed because it is preempted by federal copyright law.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant's Motion To Dismiss Plaintiff's First Amended Complaint" (Document No. 21) be granted in part as to Plaintiff's claims for conversion and violation of North Carolina's Unfair and Deceptive Trade Practices Act and denied in part as to Plaintiff's claims for misappropriation of trade secrets under North Carolina and Arizona law, respectively.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v.

<u>Benton</u>, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  <u>Id.</u>  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  <u>Martin v. Duffy</u>, 858 F.3d 239, 245 (4th Cir. 2017) (quoting <u>United States v. Midgette</u>, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: September 2, 2021

David C. Keesler
United States Magistrate Judge